**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EDWIN LORENZO, | : | Civil Action No. 08-4079 (MLC) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| T. MICHAEL POWER, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

**APPEARANCES:**

EDWIN LORENZO, #433503/464231B, Petitioner <u>Pro</u> <u>Se</u>
East Jersey State Prison, Lock Bag R, Rahway, New Jersey  07065

MARY R. JULIANO, Assistant Prosecutor
MONMOUTH COUNTY PROSECUTOR
71 Monument Park, Freehold, New Jersey 07728
Attorneys for Respondents

**COOPER, District Judge**

Petitioner, Edwin Lorenzo, petitions for a writ of habeas corpus under 28 U.S.C. § 2254, together with Brief and exhibits, challenging a judgment of conviction in the New Jersey Superior Court, Monmouth County, entered June 6, 2002, and amended November 2, 2005, and May 14, 2007, after a jury found him guilty of burglary, harassment, aggravated assault, terroristic threats, stalking, and certain persons not to have weapons. Respondents filed an Answer seeking dismissal of the Petition. For the reasons stated herein, the Petition will be denied .

## I.  BACKGROUND

The facts leading to Petitioner's arrest and conviction were summarized by the Appellate Division on direct appeal as follows:

Lorenzo committed the most serious of the offenses, burglary and aggravated assault, against his former girlfriend, Katherine Cosentino, in Belmar on March 17, 2001. His sudden, vicious, and utterly unprovoked attack was carried out in the presence of Cosentino's boyfriend, Joseph Fitzgerald, and two completely disinterested eyewitnesses. Lorenzo drove his car into the side of Cosentino's car, in which Fitzgerald was a passenger, forcing her onto the sidewalk. Cosentino called 911 on her cell phone as Lorenzo approached and began punching the window on the driver's side door of her car. After the window shattered, Lorenzo entered Cosentino's car, and began punching her while screaming, "I'll kill you bitch. Katherine you're dead." Fitzgerald ran to get help. Lorenzo then pulled Cosentino from her car and towards his own car while continuing the beating. When he tried to force her into his car, his passenger said they should leave because the police were coming. After hitting Cosentino a few more times, Lorenzo drove off. Cosentino returned to her own car and spoke to the 911 operator. Within minutes, the police arrived, spoke to all of the witnesses, and made observations of the scene and Cosentino's physical condition, all of which corroborated her story.

After the incident, Lorenzo made threatening telephone calls to Fitzgerald, demanding he set up a meeting between Lorenzo and Cosentino. He also called Cosentino's sister and threatened to kill her entire family. From the time of the initial incident to the date of his arrest, which was on April 6, Lorenzo made 669 harassing telephone calls to Cosentino. With the assistance of the police, Cosentino agreed to meet Lorenzo in Woodbridge on April 6. He was arrested at that time and found to be in possession of brass knuckles. While being processed at the police station, Lorenzo said that Cosentino had "set him up," and that he should have killed her when he had the chance to do it.

<u>State v. Lorenzo</u>, No. A-5945-01T4 slip op. at pp. 2-4 (N.J. App.

Div., May 25, 2005).

On March 7, 2002, a jury found Petitioner guilty of burglary,

harassment, aggravated assault, terroristic threats, stalking, and

certain persons not to have weapons.  By judgment of conviction filed June 6, 2002, Superior Court Judge Francis P. DeStefano granted the state's motion for an extended term as a persistent offender, and imposed an aggregate 20-year term of imprisonment with 10 years of parole ineligibility.  See State v. Lorenzo, No. A-5945-01T4 slip op., p. 2.  Petitioner appealed.  On May 25, 2005, the Appellate Division affirmed the conviction and sentence.  Id.  By order filed September 29, 2005, the New Jersey Supreme Court granted the petition for certification, limited solely to the issue of the sentence, and summarily remanded to the trial court for resentencing in light of State v. Natale, 184 N.J. 458 (2005).  See State v. Lorenzo, 185 N.J. 262 (2005).

By order filed November 2, 2005, Judge DeStefano resentenced Petitioner to the same 20-year sentence, with 10 years of parole ineligibility.  See State v. Lorenzo, Ind. No. 01-06-1073 am. j. (N.J. Super., Law Div., Nov. 2, 2005).  Petitioner appealed.  By order filed April 2, 2007, the Appellate Division remanded for reconsideration of the sentence pursuant to State v. Pierce, 188 N.J. 155 (2006), retaining jurisdiction.  See State v. Lorenzo, Nos. A-002275-05T4 & A-004524-05T4 order (N.J. App. Div., Apr. 2, 2007).  By order filed May 14, 2007, Judge DeStefano resentenced Petitioner to the same sentence, but ordered that he was to receive prior service credits of 1,804 days from May 31, 2002, to May 8, 2007.  See State v. Lorenzo, Ind. No. 01-06-1073 am. j.

3

(N.J. Super., Law Div., May 14, 2007).  The Appellate Division affirmed the amended judgment by order filed December 11, 2007, and the New Jersey Supreme Court denied certification by order filed May 6, 2008.  See State v. Lorenzo, 195 N.J. 520 (2008).

Petitioner asserts that on May 24, 2007, he filed a petition for post-conviction relief in the Law Division.  (Pet. p. 18.) According to Petitioner, this matter is pending before the Law Division.[1]  (Id. at p. 15; Reply at p. 5.)

Petitioner executed this § 2254 Petition on August 8, 2008; the Clerk received it August 14, 2008.  It raises these grounds:

> Ground One: PETITIONER'S CONVICTION WAS OBTAINED IN VIOLATION OF HIS RIGHT AGAINST SELF-INCRIMINATION UNDER NEW JERSEY LAW AND UNDER THE U.S. CONSTITUTION, BECAUSE HIS STATEMENT TO THE POLICE WITHOUT MIRANDA WARNINGS WAS INVOLUNTARY AND IT SHOULD HAVE BEEN SUPPRESSED BY THE TRIAL COURT.
>
> Ground Two: PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL WERE VIOLATED BY THE TRIAL COURT'S ADMISSION OF A 9-1-1 TAPE CONTAINING HIGHLY INFLAMMATORY AND PREJUDICIAL EVIDENCE, AND AIDED BY INACCURATE TRANSCRIPT, PREPARED BY THE SAME PROSECUTOR TRYING THE CASE.
>
> Ground Three: THE APPELLATE DIVISION'S JUSTIFICATION FOR MANDATORY JOINDER WAS BASED UPON A THEORY THAT WAS

---

[1] This Court notified Petitioner by Order entered September 26, 2008, that he has one opportunity to file a § 2254 petition, which must include all federal grounds, and asked him if he wanted to withdraw the petition in order to file his one all-inclusive § 2254 petition at a later date.  Petitioner declined.  By Order entered October 31, 2008, this Court advised Petitioner that, in the absence of extremely limited circumstances and prior approval of the United States Court of Appeals for the Third Circuit, a claim presented by Petitioner to this Court in a second or successive § 2254 petition (after completion of post-conviction relief) must be dismissed.  See 28 U.S.C. § 2244(b).  Petitioner has not indicated that he desires to withdraw this Petition.

4

NOT SUBMITTED TO THE JURY, OR CONSIDER[ED] BY THE TRIAL
COURT WHEN DECIDING THE MOTION FOR VENUE/MANDATORY
JOINDER.  NOR WAS THE 669 PHONE CALL THEORY PRESENTED
TO THE GRAND JURY, OR CHARGED IN THE INDICTMENT, IN
VIOLATION OF PETITIONER'S CONSTITUTIONAL RIGHT UNDER
ART. I, ¶¶ 8, 10, N.J. CONST., AND UNDER THE FIFTH,
SIXTH AND FOURTEENTH AMENDMENTS, U.S. CONSTITUTION.

Ground Four: PETITIONER'S CONSTITUTIONAL RIGHT UNDER
APPRENDI AND BLAKELY WERE VIOLATED WHEN HE RECEIVED THE
TOP RANGE EXTENDED TERM SENTENCE BASE[D] ON THE
SENTENCING JUDGE'S FINDING OF FACTS OTHER TH[A]N FACTS
OF PRIOR CONVICTIONS.

(Pet., ¶ 12. Grounds One-Four.)

Respondents answered, arguing that the Petition should be
denied on the merits or as unexhausted because Petitioner did not
present Grounds Two and Three to the New Jersey courts as federal
claims.[2]  Petitioner replied by letter and certification
responding on the merits.

---

[2] To the extent that Grounds Two and Three are unexhausted
because Petitioner raised them as state claims on direct appeal,
this Court will nevertheless deny these claims on the merits
pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of
habeas corpus may be denied on the merits, notwithstanding the
failure of the applicant to exhaust the remedies available in the
courts of the State").  See Taylor v. Horn, 504 F.3d 416, 427 (3d
Cir. 2007) ("Here, because we will deny all of Taylor's claims on
the merits, we need not address exhaustion"); Bronshtein v. Horn,
404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to
attempt on remand to establish a reason to excuse his procedural
default, but we find it unnecessary to do so because it is
apparent that the claims in question lack merit.  Under 28 U.S.C.
§ 2254(b)(2), we may reject claims on the merits even though they
were not properly exhausted, and we take that approach here").
Moreover, since this Court is not contemplating dismissal of the
instant Petition without prejudice as a mixed petition, it is not
necessary to consider whether a stay is warranted under Rhines v.
Weber, 544 U.S. 269 (2005).  This Court notes, however, that none
of the seven claims which Petitioner is presenting to the New
Jersey courts in his pending state petition for post-conviction
relief is raised in the Petition before this Court.  (Pet. ¶ 15.)

## II.  STANDARD OF REVIEW

A habeas corpus petition must meet "heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)).  The petition must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested.  See 28 U.S.C. § 2254 Rule 2(c)(1), (c)(2), (c)(3).

Section 2254(a) gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."  Engle v. Isaac, 456 U.S.

107, 120 n.19 (1982).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76  (2005).

A federal court's authority is limited to granting habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  <u>See</u> 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  <u>See</u> 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving

7

the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim." Rolan, 445 F.3d at 678.

As the New Jersey courts adjudicated Petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. § 2254(d). Thus, this Court may not grant habeas relief unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and Petitioner is in custody in violation of federal law, see 28 U.S.C. § 2254(a), (d)(2).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme

Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).
Clearly established law "refers to the holdings, as opposed to
the dicta, of [the Supreme Court's] decisions as of the time of
the relevant state-court decision." Williams v. Taylor, 529 U.S.
362, 412 (2000); see also Carey v. Musladin, 127 S.Ct. 649, 653
(2006) ("federal habeas relief may be granted here if the [state
court's] decision was contrary to or involved an unreasonable
application of this Court's applicable holdings").  A court must
look for "the governing legal principle or principles set forth
by the Supreme Court at the time the state court renders its
decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within
28 U.S.C. § 2254(d)(1), if the state court "contradicts the
governing law set forth in [the Supreme Court's] cases" or if it
"confronts a set of facts that are materially indistinguishable
from a decision of th[e Supreme] Court and nevertheless arrives
at a [different] result." Williams, 529 U.S. at 405-06.  Under
the "'unreasonable application' clause of § 2254(d)(1), a federal
habeas court may grant the writ if the state court identifies the
correct governing legal principle from th[e Supreme] Court's
decisions but unreasonably applies that principle to the facts of
the prisoner's case." Williams, 529 U.S. at 413.  For example,
in Carey v. Musladin, the court reversed the granting of a writ,
holding that where "[n]o holding of this Court required the

9

[state court] to apply the test of <u>Williams</u> and <u>Flynn</u> to the spectators' conduct . . . , the state court's decision was not contrary to or an unreasonable application of clearly established federal law." <u>Carey</u>, 127 S.Ct. at 654.[3]  In addition, whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4]  <u>Williams</u>, 529 U.S. at 409-10; <u>see</u> <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005).

## III.  DISCUSSION

**A.   Self-Incrimination**

In Ground One, Petitioner asserts that the admission of his statement to the police at the time of arrest violated the Self-Incrimination Clause because it was involuntarily given without <u>Miranda</u> warnings.  Specifically, Petitioner challenges the admission of his statement that "the mistake he made was that he should have killed her a long time ago."  (Petitioner's Brief, p.

---

[3] <u>See also</u> <u>Wright v. Van Patten</u>, 128 S.Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[4] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent."  <u>Marshall v. Hendricks</u>, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

11) (Docket entry no. 1-2, p. 18.)  Petitioner further contends
that admission of the statement violated the Self-Incrimination
Clause because he made the statement during interrogation without
the <u>Miranda</u> warnings in response to the following question from
Detective Souza:  "You didn't think you were going to meet her?"
(Petitioner's Brief at p. 12) (Docket entry no. 1-2, p. 19.)  The
state argues that the Appellate Division's decision rejecting
Petitioner's <u>Miranda</u> claim was not an unreasonable application of
<u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980), <u>Pennsylvania v.
Muniz</u>, 496 U.S. 582 (1990), or other Supreme Court precedent.
The state further argues that Petitioner failed to present
evidence during the suppression hearing (or trial) regarding
Detective Souza's question, and that this Court is bound by the
factual findings of the state courts regarding the <u>Miranda</u> claim.

Petitioner presented a <u>Miranda</u> claim to the Appellate
Division on direct review.  The Appellate Division rejected the
claim as follows:

> The record does not show that Lorenzo was Mirandized
> when he was taken into custody.  Detective VanEtten
> testified at the <u>Miranda</u> hearing that Lorenzo blurted
> out the statement.  The issue presented here, however,
> is essentially whether Lorenzo was under
> "interrogation" for <u>Miranda</u> purposes.
>
> The trial judge found that Lorenzo made the statement
> while he was being "processed," during which the police
> gather information such as "height, weight, date of
> birth, [and] Social Security number . . . ."  Thus,
> even if the authorities failed to provide the warnings,
> the statement is admissible without violation of
> <u>Miranda</u> because, we have held, booking procedures and

11

the routine questions associated therewith are
ministerial in nature and beyond the right to remain
silent.

Nor can we say the judge should have nevertheless
excluded the statement as unduly prejudicial.  It was
obviously relevant to Lorenzo's state of mind and we
cannot say that admitting the evidence constituted an
abuse of discretion.

State v. Lorenzo, No. A-5945-01T4 slip op., pp. 11-12 (citations
omitted).

The Fifth Amendment provides, in part, that no person "shall
be compelled in any criminal case to be a witness against
himself."  U.S. Const. amend. V.  The Fourteenth Amendment
incorporates the Fifth Amendment privilege against self
incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).

In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held
that "without proper safeguards the process of in-custody
interrogation . . . contains inherently compelling pressures
which work to undermine the individual's will to resist and to
compel him to speak where he would not otherwise do so freely."
384 U.S. at 467.  When police ask questions of a suspect in
custody without administering the required warnings, Miranda
dictates that the answers received be presumed compelled and that
they be excluded from evidence at trial in the State's case in
chief.  See Oregon v. Elstad, 470 U.S. 298, 317 (1985).  Thus, a
confession taken during a custodial interrogation without the
provision of Miranda warnings violates the privilege against Self

Incrimination.  See Thompson v. Keohane, 516 U.S. 99 (1995).

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and the he has a right to the presence of an attorney, either retained or appointed."  Miranda, 384 U.S. at 444.  Unless a suspect "voluntarily, knowingly and intelligently" waives these rights, incriminating responses may not be introduced into evidence by the prosecution in a criminal proceeding.  Id.

But the Supreme Court noted in Miranda that "[a]ny statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence [because t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated."  Id. at 478.  In Rhode Island v. Innis, 446 U.S. 291, 300-02 (1980), the Supreme Court held that the privilege against Self-Incrimination does not prohibit admission of an unsolicited statement made by a defendant who is not being interrogated by police, despite the absence of Miranda warnings:

> We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit

13

an incriminating response from the suspect. The latter
portion of this definition focuses primarily upon the
perceptions of the suspect, rather than the intent of
the police. This focus reflects the fact that the
Miranda safeguards were designed to vest a suspect in
custody with an added measure of protection against
coercive police practices, without regard to objective
proof of the underlying intent of the police. A
practice that the police should know is reasonably
likely to evoke an incriminating response from a
suspect thus amounts to interrogation.  But, since the
police surely cannot be held accountable for the
unforeseeable results of their words or actions, the
definition of interrogation can extend only to words or
actions on the part of police officers that they should
have known were reasonably likely to elicit an
incriminating response.

Rhode Island v. Innis, 446 U.S. at 300-02 (footnotes omitted);

see Arizona v. Mauro, 481 U.S. 520, 528 (1987) (police did not

violate Mauro's Miranda rights when they allowed him to speak

with his wife in the presence of a police officer at the police

station, as "[w]e doubt that a suspect, told by officers that his

wife will be allowed to speak to him, would feel that he was

being coerced to incriminate himself in any way").

In Pennsylvania Muniz, 496 U.S. 582 (1990), a police officer

arrested Muniz for suspected drunk driving and transported him to

the booking center where the following events transpired:

Following its routine practice for receiving persons
suspected of driving while intoxicated, the booking
center videotaped the ensuing proceedings.  Muniz was
informed that his actions and voice were being recorded,
but he was not at this time (nor had he been previously)
advised of his rights under Miranda . . . .  Officer
Hosterman first asked Muniz his name, address, height,
weight, eye color, date of birth, and current age.  He
responded to each of these questions, stumbling over his
address and age.  The officer then asked Muniz, "Do you

14

> know what the date was of your sixth birthday?"  After
> Muniz offered an inaudible reply, the officer repeated,
> "When you turned six years old, do you remember what
> the date was?"  Muniz responded, "No, I don't."

Muniz, 496 U.S. at 585-86.

After the video was admitted and Muniz was convicted at a bench trial, Muniz moved for a new trial, contending that the court had unconstitutionally admitted the videotape at the booking center because his statements had been given without Miranda warnings.  The trial court denied the motion, but the Pennsylvania Superior Court reversed and remanded.  After the Pennsylvania Supreme Court denied review, the Supreme Court granted certiorari.  Because the "sixth birthday question constituted an unwarned interrogation for purposes of the privilege against self-incrimination, and . . .  Muniz's answer was incriminating," the Court held that Muniz's response to that question should have been suppressed under the Self-Incrimination Clause.  Muniz, 496 U.S. at 600 (citation omitted).  The Supreme Court further ruled that, although the first seven questions regarding Muniz's name, address, height, weight, eye color, date of birth, and current age qualified as custodial interrogation, "Muniz's answers to these first seven questions are nonetheless admissible because the questions fall within a routine booking question exception which exempts from Miranda's coverage questions to secure the biographical data necessary to complete booking or pretrial services."  Id. (citation and internal quotation marks omitted).

15

"[The Supreme] Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S.Ct. 1411, 1419 (2009) (citing Wright v. Van Patten, 128 S.Ct. 743, 746-47 (2008). Because the New Jersey court's rejection of Petitioner's Miranda claim was not contrary to, or an unreasonable application of Innis, Muniz, Miranda, or other Supreme Court holdings, habeas relief is not warranted pursuant to 28 U.S.C. § 2254(d)(1).

Petitioner nevertheless argues that this Court should grant habeas relief pursuant to § 2254(d)(2) because the state court's rejection of the Miranda claim was based on unreasonable factual findings.  To support this argument, Petitioner submitted a certification to this Court (Petitioner's exhibit 24) dated June 30, 2008, in which he asserts that his incriminating statement during booking was made in response to Detective Souza's question, "You didn't think you were going to meet her [the victim]?" which constitutes interrogation.  (Petitioner's Brief, p. 12) (Docket entry no. 1-2, p. 19.)  "[R]ecognizing a 'booking exception' to Miranda does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's Miranda rights, the police may not ask questions, even during booking, that are

designed to elicit incriminatory admissions."  <u>Muniz</u>, 496 U.S. at 602 n.14 (citation and internal quotation marks omitted).

Where a petitioner seeks habeas relief on the basis of a state court's erroneous factual determination, two provisions of Section 2254 necessarily apply.  First, it provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); <u>see</u> <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005) (district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'").  Second, it precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**(1) Was the Finding that Petitioner Made the Incriminating Statement to Police in Response to Routine Booking Questions Entitled to a Presumption of Correctness under Section 2254(e)(1)?**

Petitioner concedes that no evidence was presented to the New Jersey courts at the suppression hearing or otherwise, to show that his incriminating statement was made in response to Officer Souza's asking Petitioner, "You didn't think you were going to meet her?"  Rather, consistent with the evidence before them, the

17

New Jersey courts found that Petitioner's incriminating statement was given in response to routine booking questions.  Under § 2254(e)(1), this Court must accord this factual finding a presumption of correctness.  See Rolan, 445 F.3d at 678-81 (3d Cir. 2006) (holding district court erred by failing to defer under § 2254(e)(1) to PCRA appellate court's factual determination that exculpatory witness, whom defense attorney failed to investigate, was not willing to testify at trial because state court not required to hold evidentiary hearing or comply with any prerequisites to deference).

**(2) Was the State Courts' Factual Finding Unreasonable?**

After concluding that there are state court findings of fact to which it must defer under 28 U.S.C. § 2254(e)(1), a "District Court should [] review[] those findings to ascertain whether or not they were reasonable" under 28 U.S.C. § 2254(d)(2).  Rolan, 445 F.3d at 681.  A habeas petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court factual determination is not unreasonable in light of the evidence presented in the state court under § 2254(d)(2) where "[r]easonable minds reviewing the record might disagree" on the

18

factual finding.  <u>Rice v. Collins</u>, 546 U.S. 333, 341-42 (2006).
On the other hand, the Third Circuit held in <u>Rolan v. Vaughn</u> (a §
2254 case) that the Pennsylvania court's finding that an
exculpatory witness was not willing to testify on behalf of Rolan
was objectively unreasonable under § 2254(d)(2) "because it was
not supported by the record" before the Pennsylvania court.
<u>Rolan</u>, 445 F.3d at 681.

The finding by the New Jersey courts that Petitioner made
the incriminating statement in response to routine booking
questions is supported by the state court record.  Thus, the
finding is not objectively unreasonable and Petitioner is not
entitled to habeas relief under § 2254(d)(2).[5]

---

[5] Section 2254(e)(2) prohibits this Court from conducting an
evidentiary hearing because Petitioner failed to develop the
factual basis of the claim in state court and he has not satisfied
the requirements of 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual
> basis of a claim in State court proceedings, the court
> shall not hold an evidentiary hearing on the claim
> unless the applicant shows that-
> (A) the claim relies on-
>     (i) a new rule of constitutional law, made
>     retroactive to cases on collateral review by
>     the Supreme Court, that was previously
>     unavailable; or
>     (ii) a factual predicate that could not have
>     been previously discovered through the
>     exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient
> to establish by clear and convincing evidence that but
> for constitutional error, no reasonable fact-finder
> would have found the applicant guilty of the underlying
> offense.

**B.   Admission of 911 Tape Recording**

In Ground Two, Petitioner contends that admission of the 911 tape recording violated Due Process guaranteed by the Fourteenth Amendment of the Constitution.  As factual support, Petitioner argues that the tape was inadmissible under Rule 403 of the New Jersey Rules of Evidence because: (1) a question existed as to whether the 911 operator was competent to operate the recording device; (2) a substantial portion of the tape was inaudible; (3) the transcript prepared by the prosecutor's office and given to jurors was inaccurate and misled the jurors; and (4) the prejudicial value of the tape outweighed its probative value. Respondents argue that Petitioner is not entitled to habeas relief on Ground Two because the admission of the 911 tape recording is a question of state law that is not cognizable under § 2254.  Respondents further argue that, to the extent Ground Two raises a due process claim, the claim is unexhausted because Petitioner presented it to the state courts as a claim under the New Jersey Rules of Evidence.

Petitioner argued on direct appeal that the 911 tape was improperly admitted.  The Appellate Division rejected the claim:

> The 911 tape was admissible under the five-part test set forth in State v. Driver, 38 N.J. 255, 287 (1962). The trial judge found that it was "obviously [of] a female voice that was screaming and crying in obvious terror.  She was saying, no, and help.  She identified herself."  Testimony at the Driver hearing further established that the recording device was capable of taping the conversation.  Karin Magnin, an emergency

20

dispatcher for the Monmouth County's Sheriff's Office, testified that all calls the emergency dispatch unit receives are automatically recorded . . . .  The operator who testified at trial stated that after the screaming and crying concluded, she was able to understand "[that somebody hit her vehicle and pulled her out of the vehicle and was assaulting her."  She also testified that the transcript was accurate.  As to the extraneous noises, testimony at the <u>Driver</u> hearing revealed that the operator was eventually able to understand Cosentino after he screams and cries ceased.  Thus, they did not interfere with the tape's continuity; they were merely the first sounds the operator heard.

Admission of the 911 tape was not unduly prejudicial.  Lorenzo concedes that the evidence is relevant since it corroborates the testimony regarding the assault that took place on March 17.  Of course, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of undue prejudice.  <u>N.J.R.E.</u> 403 . . . .  Here the admission of the audiotape was not unduly prejudicial because it corroborated both Cosentino's and Fitzgerald's testimony as to the events on March 17 . . . .  As the trial judge concluded, the tape was one step removed from having a video recording of the crime, and it corroborated the testimony of both Cosentino and Fitzgerald, which was sharply contested by Lorenzo.

Nor did the trial judge abuse his discretion by allowing the jury to read a transcript of the audiotape while it was played in court . . . .  The judge instructed the jury at trial that the transcript was not in evidence, but was to serve merely as an aid . . . .

<u>State v. Lorenzo</u>, No. A-5945-01T4 slip op., pp. 6-10.

This Court agrees with Respondents that, although he mentions the Due Process Clause in the heading, Ground Two relies on the New Jersey Rules of Evidence.  Petitioner in effect contends that admission of the tape violates due process because it was not in accordance with the state rules of evidence.  But "errors of state law cannot be repackaged as federal errors simply by citing

the Due Process Clause." <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997).  Moreover, "a state court's misapplication of its own law does not generally raise a constitutional claim." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); <u>see</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).  To the extent that Ground Two raises a due process claim, the claim fails, as "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983).

In <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991), the Supreme Court held that the state court's admission in petitioner's trial for murdering his infant daughter of the testimony of two physicians that the child had suffered child abuse (evidence of rectal tearing that was six weeks old and rib fractures that were seven weeks old) did not violate due process.

> The evidence of battered child syndrome was relevant to show intent, and nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence simply because the defense chooses not to contest the point.  Concluding, as we do, that the prior injury evidence was relevant to an issue in the case, we need not explore further the apparent assumption of the Court of Appeals that it is a violation of the due process guaranteed by the Fourteenth Amendment for evidence that is not relevant to be received in a criminal trial.  We hold that McGuire's due process rights were not violated by the admission of the evidence.

<u>Id.</u> at p. 70.

This Court is not aware of a Supreme Court case establishing that the admission of prejudicial evidence constitutes a violation of federal constitutional rights.  See, e.g., Estelle, 502 U.S. at 70 (rejecting due process challenge to admission of evidence of prior injuries in trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction); cf. Rivera v. Illinois, 129 S.Ct. 1446, 1454 (2009) ("The Due Process Clause, our decisions instruct, safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial") (citation and internal quotation marks omitted). Because the admission of the 911 tape and the decision to allow the jury to read the prosecution-prepared transcript were not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Two. See Albermi v. McDaniel, 458 F.3d 860, 864-66 (9th Cir. 2006); Minett v. Hendricks, 135 Fed.Appx. 547 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary to or unreasonable application of clearly established Supreme Court precedent); Watkins v. Meloy, 95 F.3d 4, 7 (7th Cir. 1996) ("If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be

excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission").

## C.  Joinder

In Ground Three, Petitioner asserts that "the appellate division's justification for mandatory joinder was based upon a theory that was not submitted to the jury, or consider[ed] by the trial court when deciding the motion for venue/mandatory joinder. Nor was the 669 phone call theory presented to the grand jury, or charged in the indictment, in violation of petitioner's constitutional right under . . . the Fifth, Sixth and Fourteenth amendments."  (Pet. ¶ 12.C.)  As factual support, Petitioner asserts that the trial court improperly denied his motion to sever counts 11 (possession of a prohibited weapon), 14 (stalking), and 15 (certain persons not to have a weapon).  Petitioner so moved on the ground that the crimes occurred in Middlesex County, a venue different from that of the trial court, and New Jersey court rules require the indictment and prosecution of a defendant to take place in the county in which the crimes were committed.  Respondents argue that Petitioner is not entitled to habeas relief on Ground Three because joinder and severance are questions of state law.

Petitioner challenged joinder on direct appeal.  The Appellate Division rejected the claim, finding that joinder was proper under New Jersey law because all the counts were connected and there was no undue prejudice to Petitioner.  Specifically, the Appellate Division found:

> [T]he counts with respect to the possession of brass
> knuckles were part and parcel of the "course of criminal
> conduct" that is required for stalking under <u>N.J.S.A.</u>
> 2C:12-10.  Those charges also provide further context
> to the criminal event, beginning on March 17, 2001,
> continuing through March and early April through the
> 669 phone calls, and ending with Lorenzo's apprehension
> where he planned to meet Cosentino and where the police
> found him armed with the brass knuckles.

<u>State v. Lorenzo</u>, No. A-5945-01T4 slip op., pp. 20-21.

This Court agrees with Respondents that Ground Three raises a state law claim, as Petitioner argues that joinder violated New Jersey court rules.  But to the extent that Ground Three raises a due process claim, habeas relief is not warranted because "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  <u>United States v. Lane</u>, 474 U.S. 438, 446 n.8 (1986).  "[A]n important element of a fair trial is that a jury consider <u>only</u> relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence."  <u>Zafiro v. United States</u>, 506 U.S. 532, 540 (1993) (citation and internal quotation marks omitted).

The denial by the New Jersey courts of severance did not "result[] in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  <u>Lane</u>, 474 U.S. at 446. Accordingly, it was not contrary to, or an unreasonable application of Supreme Court precedent.  <u>See</u> <u>Herring v. Meachum</u>,

11 F.3d 374, 377-78 (2nd Cir. 1993) ("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that _actual_ prejudice resulted from the events as they unfolded during the joint trial"); United States ex rel. Laws v. Yeager, 448 F.2d 74, 82 (3d Cir. 1971); United States ex rel. Evans v. Follette, 364 F.2d 305 (2d Cir. 1966).

**D.    Blakely Claim**

In Ground Four, Petitioner claims that his "constitutional rights under Apprendi and Blakely were violated when he received the top range extended term sentence base[d] on the sentencing judge's finding of facts other th[a]n facts of prior convictions." (Pet. ¶ 12.D.)  As factual support, Petitioner asserts:

> In light of Pierce, Petitioner was again order[ed] a remand for resentencing under the "expanded range" of extended sentences made available in Pierce.  The sentencing court, however, resentenced Petitioner to the top of the extended term range, once again after finding the same aggravating factors previously found, i.e., aggravating factors (3), (6), and (9).  In violation of Petitioner's rights to have a jury find facts other than a prior record, and in violation of Apprendi's well-established progeny . . .

> The crux of Petitioner's argument in regard to the "need to protect the public" finding upon which Petitioner's extended term was imposed, violates the constitutional principles of law established in Apprendi, Blakely, and Booker, . . . .  There should be no doubt that such a judicial fact-finding of "the need to protect the public" or any aggravating factors such as (3) and (9), exceeds the mere finding of a prior conviction, and thus, it should be found by a jury beyond a reasonable doubt.

(Docket entry no. 1-2, pp. 45-46.)

26

Petitioner was resentenced to a 20-year term by order filed November 2, 2005, as a result of a remand summarily ordered by the New Jersey Supreme Court pursuant to State v. Natale,184 N.J. 458, 466 (2005) ("sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee").  On May 14, 2007, the Law Division again resentenced Petitioner to a 20-year term after the Appellate Division summarily remanded by order filed April 2, 2007, pursuant to State v. Pierce, 188 N.J. 155 (2006).

Petitioner appears to argue that the New Jersey Supreme Court's application of Blakely to New Jersey's persistent offender statute, N.J.S.A. § 2C:44-3, in State v. Pierce is nevertheless contrary to, or an unreasonable application of Blakely and Apprendi because Pierce allows the judge to determine the sentence based on the judge's finding of need for "protection of the public," rather than a jury's finding.

New Jersey's persistent offender statute, N.J.S.A. § 2C:44-3(a), provides: "The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds . . . [that t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender."  A persistent offender is "a person who

27

at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced." N.J.S.A. § 2C:44-3(a).

The New Jersey Supreme Court considered the Sixth Amendment Blakely challenge to § 2C:44-3(a) in State v. Pierce.  The court "f[ou]nd no Sixth Amendment violation in the sentencing court's consideration of objective facts about defendant's prior convictions, such as the dates of convictions, his age when the offenses were committed, and the elements and degrees of the offenses, in order to determine whether he qualifies as a 'persistent offender.'  That finding by the court renders defendant statutorily subject to a sentence within the higher extended-term range pursuant to the prior-conviction exception recognized by Blakely".  Pierce, 188 N.J. at 163 (footnote omitted).

The court agreed with Pierce that the automatic imposition of an extended sentence based on the judicial finding that it is needed for "protection of the public" violates the Sixth Amendment under Blakely "because it enables the sentencing court

28

to raise the sentencing maximum above the top of the ordinary-term range in order to impose a sentence within the extended-term range." Id. at 165.  To remedy this Blakely violation, the Pierce court could have engrafted the Sixth Amendment requirement onto the persistent offender statute (as Petitioner suggests) by holding that no persistent offender may be sentenced to an extended term pursuant to N.J.S.A. § 2C:44-3(a) unless the jury found beyond a reasonable doubt the "protection of the public" factor.  However, instead of doing so, the Pierce court construed the persistent offender statute in a manner analogous to the way the Supreme Court construed the federal sentencing guidelines in United States v. Booker, 543 U.S. 220, 246 (2005).

The Booker Court explained that "today's [Sixth Amendment] holding means that it is no longer possible to maintain the judicial factfinding that Congress thought would underpin the mandatory Guidelines system that it sought to create and that Congress wrote into the Act . . . .  Hence we must decide whether we would deviate less radically from Congress' intended system (1) by superimposing the constitutional requirement announced today or (2) through elimination of some provisions of the statute." Id. at 246-47.  The Court then explained "(1) why Congress would likely have preferred the total invalidation of the Act to an Act with the Court's Sixth Amendment requirement engrafted onto it, and (2) why Congress would likely have

29

preferred the excision of some of the Act, namely the Act's mandatory language, to the invalidation of the entire Act." Id. at 249.  Thus, the Court held that "without . . . the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges - the statute falls outside the scope of Apprendi's requirement." Id. at 259 (citations and internal quotation marks omitted).  By excising that portion of the statute that made the sentence-enhancing factors (found by a judge) mandatory, and by ruling that these factors are now advisory, the Court held that the judicial determination of these advisory factors does not violate the Sixth Amendment.  Id. at 265-67.

Like the Booker Court, the New Jersey Supreme Court elected not to remedy the Sixth Amendment violation in New Jersey's persistent offender statute by requiring a jury to find the "protection of the public" standard; rather, the Pierce court elected to remedy the Sixth Amendment violation by construing New Jersey law such that the judicial "finding of 'need to protect the public' is not a precondition to a defendant's eligibility for sentencing up to the top of the discretionary extended-term range". Id. at 169.  The Pierce court thus avoided the Sixth Amendment issue by construing N.J.S.A. § 2C:44-3(c) as incorporating the following two-step procedure:

> The sentencing court must first, on application for discretionary enhanced-term sentencing under N.J.S.A.

30

> 2C:44-3(a), review and determine whether a defendant's
> criminal record of convictions renders him or her
> statutorily eligible.  If so, then the top of the range
> of sentences applicable to the defendant, for purposes
> of Apprendi, becomes the top of the enhanced range.
> Thereafter, whether the court chooses to use the full
> range of sentences opened up to the court is a function
> of the court's assessment of the aggravating and
> mitigating factors, including the consideration of the
> deterrent need to protect the public.

Pierce, 188 N.J. at 168.

Thus, as the Supreme Court did in Booker, the New Jersey Supreme Court construed New Jersey's persistent offender statute to avoid the Sixth Amendment issue by making the "protection of the public" a discretionary factor.  Because Petitioner was resentenced in accordance with the holding of Pierce, which construed New Jersey's persistent offender statute in a way that avoids the Sixth Amendment issue under Apprendi, the adjudication by the New Jersey courts of Petitioner's Sixth Amendment claim was not contrary to, or an unreasonable application of, Apprendi, Blakely, Booker, or other Supreme Court holdings, and Petitioner is not entitled to habeas relief on Ground Four.

**E.   Certificate of Appealability**

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

31

**IV.   CONCLUSION**

Based on the foregoing, the Court will deny the Petition and deny a certificate of appealability.


                              ___s/ Mary L. Cooper___
                              **MARY L. COOPER**
                              United States District Judge

Dated:    July 6, 2009

32